UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

US ALLIANCE FEDERAL CREDIT UNION,

           Plaintiff,

     v.

M/V KAMARA FAMILY A/K/A SOULSTICE, her engines, tackle, apparel, appurtenances, etc., having Official No. 1248827 and Hull Serial No. XAX40137E313, *in rem*, and RUSLAN AGARUNOV, *in personam*,

           Defendants.

**REPORT AND RECOMMENDATION**
20-CV-1733-AMD-SJB

**BULSARA, United States Magistrate Judge:**

      US Alliance Federal Credit Union ("US Alliance") commenced this action on April 8, 2020. (Compl. dated Apr. 6, 2020 ("Compl."), Dkt. No. 1). The Complaint contains two claims, one against the vessel M/V Kamara Family a/k/a Soulstice (the "Vessel") and one against its owner, Ruslan Agarunov ("Agarunov," and collectively, "Defendants"), alleging that Agarunov defaulted on the $350,000 loan used to purchase the Vessel. US Alliance has filed a second motion for default judgment. (Mot. for Default J. and Order of Sale dated May 12, 2021 ("Second Mot."), Dkt. No. 22). Defendants failed to appear or otherwise defend the lawsuit, and US Alliance seeks authorization to sell the Vessel so it can recover the remaining principal, attorney's fees and costs, and additional expenses. The Honorable Ann M. Donnelly referred the motion for default judgment to the undersigned on May 13, 2021. For the reasons outlined below, the Court respectfully recommends the motion be denied.

      The Court already denied a motion for default judgment in this case. *See US All. Fed. Credit Union v. M/V Kamara Fam.*, No. 20-CV-1733, 2021 WL 1795313, at *2

(E.D.N.Y. Apr. 16, 2021), *report and recommendation adopted*, 2021 WL 1784316, at *1 (May 5, 2021).  Among the deficiencies that the Court identified and which led to the denial were the failures to cite to legal authority in the memorandum of law; indicate whether another person had an interest in the Vessel; show that service was completed; provide documentation to support an entitlement to the remaining principal, attorney's fees, costs, and various expenses; and attach the note to the Complaint.  *Id.* at *1–*2.  In response, US Alliance made some changes and re-filed its motion.  However, several significant deficiencies remain.

Under the Commercial Instruments and Maritime Liens Act (the "CIMLA"), 46 U.S.C. § 31301 *et seq.*, a "preferred mortgage" creates a maritime lien against a mortgaged vessel.  46 U.S.C. § 31325(a).[1]  "A maritime lien is a special property right in the vessel, arising in favor of the creditor by operation of law as security for a debt or claim, which arises when the debt arises."  *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018) (quotations and alteration omitted).

"A preferred mortgage is one that has been filed 'in substantial compliance with section 31321'" of the CIMLA, *Maryland Nat'l Bank v. Yacht Escape II*, 817 F. Supp. 1, 1 (E.D.N.Y. 1993), a provision that contains a number of recording and filing requirements.  *See generally Midlantic Nat'l Bank v. Sheldon*, 751 F. Supp. 26, 28 (E.D.N.Y. 1990); *Bank of the W. v. Sailing Yacht Serendipity*, 101 F. Supp. 3d 238, 248 (E.D.N.Y. 2015).  Upon default on a preferred mortgage, a mortgagee, like US Alliance, may enforce the claim against the secured vessel.  46 U.S.C. § 31325(b)(1); *Midlantic Nat'l Bank*, 751 F. Supp. at 28.  Such an action is filed *in rem* against the vessel, and

---

[1] The CIMLA replaced the Ship Mortgage Act in 1989.  1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 9:5 (6th ed. 2021).

2

recovery is limited to the value of the vessel.  *Bay Casino, LLC. v. M/V Royal Empress*, 20 F. Supp. 2d 440, 447–48 (E.D.N.Y. 1998).  An *in personam* action may be filed against the owner personally.  *Id.*

This action was filed both *in rem* and *in personam* seeking to enforce the terms of a Loan and Security Agreement (the "Note") and a mortgage, following Agarunov's failure to make the payments due to US Alliance.  (Compl. ¶¶ 9, 11, 12, 14; *see also* Loan and Security Agreement dated Oct. 14, 2015, attached as Ex. A to Aff. for J. by Default and Order of Sale dated May 12, 2021 ("Aff. for J."), Dkt. No. 22-2; First Preferred Ships Mortgage dated Oct. 13, 2015 (the "Mortgage"), attached as Ex. D to Compl. at 1).  When a plaintiff seeks to foreclose in admiralty on payment due under a note and mortgage, the note is attached to the complaint.  *E.g.*, *Pawtucket Credit Union v. M/Y Sea Rayna*, No. 3:20-CV-01847, 2021 WL 4248968, at *2 (D. Conn. Sept. 17, 2021); *Bank of the W.*, 101 F. Supp. 3d at 248–49; *JP Morgan Chase Bank, N.A. v. M/Y FORTUNA*, No. CV 11-2514, 2013 WL 1148920, at *1 (E.D.N.Y. Feb. 12, 2013), *report and recommendation adopted*, 2013 WL 1195420, at *2 (Mar. 20, 2013).

The Court previously noted that here the Note was not attached to the Complaint or the motion for default judgment, (*see* Mot. for Default J. and Order of Sale dated Nov. 11, 2020, Dkt. No. 18), which precluded the Court from determining the entitlement to any recovery.  *See M/V Kamara Fam.*, 2021 WL 1795313, at *1.  Indeed, the Court noted that US Alliance attempted to attach the Note to the Complaint, but had botched its attempt to do so.  *Id.* at *1 n. 1 ("The Complaint suggests that the Note, a Loan and Security Agreement dated October 2, 2015, is attached as Exhibit B to the Complaint.  However, Exhibit B is a Bill of Sale between Agarunov and the Vessel's previous owners.") (internal citations omitted).  Perhaps interpreting the "or" as conferring an

3

option to serve either an amended Complaint or a revised motion with the missing document, US Alliance only attached the Note to the motion. (*See* Second Mot.; Note). That was an error. Certainly, providing the Note with the motion for default judgement placed one of the documents pertinent to the imposition of liability before the Court (the other being the Mortgage, which was already attached to the Complaint). But that did not solve the notice problem: attaching the operative document to a complaint is essential to giving notice to a defendant of the nature of the claim. Despite its absence from the Complaint, US Alliance relies on the Note to establish liability. (*See* Compl. ¶¶ 14–15, 22–24; Mem. in Supp. of Mot. for Default J. dated May 12, 2021 ("Mem."), Dkt. No. 22-1 at 6–7 ("Failure to make any of the scheduled payments triggers default under the Note . . . . Plaintiff seeks a judgment against the Vessel . . . which sum includes the outstanding balance on the Note, interest and late fees as provided for in the Note . . . . The exhibits supporting the damages due to Plaintiff include, *inter alia*: the Note[.]")).

And while it has served the Note in its revised motion, a default judgment motion cannot cure a pleading error. *E.g.*, *J & J Sports Prods., Inc. v. RK Soto Enterprises Inc.*, No. 17 Civ. 2636, 2020 WL 7684894, at *12 (E.D.N.Y. Feb. 7, 2020) (collecting cases) ("This Court notes that the papers submitted in support of [plaintiff's] motion for default judgment cannot be used to remedy the defects in the Amended Complaint as courts in this District have rejected that argument time and time again."), *report and recommendation adopted*, 2020 WL 7041089, at *3 (Dec. 1, 2020); *J & J Sports Prods., Inc. v. Abdelraouf*, No. 18-cv-2547, 2019 WL 457719, at *4 (E.D.N.Y. Feb. 5, 2019) ("[A] default judgment cannot be entered unless a defendant was given adequate notice of the claims alleged by plaintiff; notice, in turn, is established by the facts alleged in the complaint. . . . But plaintiff does not cite any cases that . . . provide authorization for a

4

court to grant a default judgment motion on the basis of supplemental information external to the pleadings."); *Sundesa, LLC v. IQ Formulations, LLC*, No. CV 19-06467, 2020 WL 3067383, at *2 (C.D. Cal. Feb. 27, 2020) ("Some, but not many, factual details as to the nature of the Agreement are provided in supplemental documents attached to Plaintiff's Motion [for Default Judgment]. However, it is not clear that even the information provided in these documents is sufficient. Further, they are not attached to the Complaint and cannot be used to show satisfaction of Plaintiff's pleading obligations[.]"). The proper course would have been for US Alliance to attach the Note to an amended Complaint *and* any revised motion for default judgment.[2]

This is, however, not the only issue with the Complaint that makes entering default judgment improper. The Complaint avers that the date of the Note is October 2, 2015. (Compl. ¶ 9). The Mortgage, which is attached to the Complaint, refers to a note dated October 13, 2015. (*See* Mortgage at 1). And the note attached to the motion for default judgment is dated October 14, 2015. (*See* Note at 1). These discrepancies suggest that one or more debt instruments are at issue, that the wrong Note was provided with the motion, or both; in either case the Court cannot enter a default judgment in the face of such a discrepancy. *Cf. United States v. Mance*, No. 17-CV-2902, 2020 WL 1080438, at *3 (E.D.N.Y. Mar. 6, 2020) ("At the hearing, Plaintiff agreed to withdraw its motion for default judgment and file an amended complaint—

---

[2] This is the odd situation where "or" means "and." Not literally; but a deficit identified as a failure to do A or B is a failure to do either, and in this context, a fix requires one to do both A *and* B to remedy. *Cf. Smith v. United Television, Inc. Special Severance Plan*, 474 F.3d 1033, 1037 (8th Cir. 2007) (collecting cases) ("The competing conclusion—that the phrase must be read in the disjunctive—is reasonably debatable, however, as courts have recognized the principle of contract interpretation that the terms 'and' and 'or' may be interchanged, in context, to carry out the parties' intent and the agreement's purpose.").

5

Plaintiff's counsel acknowledged that the date of execution of the promissory note listed on the certificate of indebtedness attached to the original Complaint (April 5, 2000) was erroneous.").

Besides the issues with the Note, the Court noted that the prior motion contained several other serious deficiencies and omissions. *M/V Kamara Fam.*, 2021 WL 1795313, at *1–*2. Specifically, the Court observed that "Plaintiff's motion does not cite to a single case or statutory authority explaining Plaintiff's entitlement to the relief sought." *Id.* at *1. That deficiency alone warranted denial for failure to comply with Local Civil Rule 7.1, which requires motions to be accompanied by "[a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion[.]" *See id.* (alterations in original) (quoting Loc. Civ. R. 7.1(a)(2)). The present motion cites to case law to argue liability, (Mem. at 4–6), but cites to no authority to support the damages or other relief US Alliance seeks—except for the unremarkable proposition that a court may award damages based on evidence submitted via affidavit. (*Id.* at 6). But as discussed herein, that is hardly enough.

*First*, US Alliance seeks interest through May 11, 2021 at $66.30 per day, and cites to the Note as evidence of this amount. (Aff. for J. at 6; *see also* Garcia Aff. dated May 12, 2021, Dkt. No. 22-15 at ¶¶ 5–6). "[D]istrict courts have broad discretion in determining . . . the interest rate to be used," and a note may supply the interest rate. *Bank of the W.*, 101 F. Supp. 3d at 251 (using 6% contractual interest rate as prejudgment interest rate) (quoting *Brooklyn Navy Yard Dev. Corp. v. Harbor Diesel Fuel Servs., Inc.*, No. CV 10-5715, 2014 WL 4364628, at *7 (E.D.N.Y. Aug. 1, 2014)). But here, the Note does not contain a daily interest rate, only an annual interest rate of 7.740%. (Note at 1). And Plaintiff does not explain how the annual interest rate

6

calculates to $66.30 per day anywhere in the motion papers.  Further muddying the waters is that in the Complaint, US Alliance seeks a different daily amount in interest—$66.12 per day.  (Compl. ¶¶ 18, 24).

*Second*, US Alliance also seeks attorney's fees and costs.  While US Alliance provides one citation to the Note when arguing for fees, (Mem. at 2 (citing Note ¶ 9)), it provides no case authority or argument regarding the recovery of costs.  (*See id.*)  And while "costs" in the context of "attorney's fees and costs" is typically understood as taxable costs, *e.g.*, 28 U.S.C. § 1920, US Alliance seeks payment for a bevy of other items, best understood as expenses: repossession/transportation; vessel storage; and marshal's fees.  The Note may provide for such recovery, (*see* Note ¶ 9), but that is insufficient for the Court to impose judgment.  Some legal analysis is required; none is provided.  A maritime lien only extends to "necessaries," and that defines the limit of the judgment that can be imposed *in rem*.  *Exxon Corp. v. Cent. Gulf Lines, Inc.*, 780 F. Supp. 191, 193 (S.D.N.Y. 1991) ("[T]he Lien Act only protects those who 'furnish' supplies, repairs or other 'necessaries.'").  A contractual claim may give rise to an *in personam* judgment.  1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 3:10 n. 43 (6th ed. 2021) ("The Federal Maritime Lien Act, 46 U.S.C. at § 31342, authorizes an *in rem* admiralty action in favor of a person furnishing necessaries to any vessel. . . . But executory contracts and anticipatory breaches may be enforced only *in personam*.") (internal quotations omitted).  If the claimed "costs" are indeed "necessaries," then they can be recovered *in rem*; otherwise, they can only be included in the judgment against the owner, Agarunov.  US Alliance does not include even a cursory analysis to explain whether the costs are necessaries and can therefore be included in the *in rem* judgment,

7

or whether they can only be recovered under the Note and sought from Agarunov personally.

As for the attorney's fees, counsel seeks different amounts in the documents. The detailed time sheet provided indicates that counsel has incurred $16,852.50 in attorney's fees. (History Bill dated May 12, 2021, attached as Ex. A to Taitz Aff. in Supp. of Atty's Fees dated May 12, 2021 ("Atty's Fees Aff."), Dkt. No. 22-17 at 5). Yet the Affidavit for Judgment seeks $18,352.50 for "Legal Fees to Taroff & Taitz, LLP" and cites to the Attorney's Fees Affidavit. (Aff. for J. at 6). That Affidavit seeks $16,852.50 for attorney's fees for work completed, and an additional $1,500.00 for fees it expects to, but has not yet incurred. (Atty's Fees Aff. at 1–2). "[T]he Court cannot recommend that plaintiff be awarded attorneys' fees that have not yet been earned." *E. Sav. Bank, FSB v. Strez*, No. 11-cv-1543, 2013 WL 6834806, at *6 (E.D.N.Y. Dec. 20, 2013).

## CONCLUSION

In light of these deficiencies, the Court respectfully recommends that the motion for default judgment be denied. US Alliance may file an amended Complaint that corrects the identified deficiencies, re-serve the pleading, and then file a motion for the default judgment upon entry of default and failure to respond. Any such motion must correct the deficiencies identified herein.

Any objections to the Report and Recommendation above must be filed with the Clerk of Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a

8

waiver of any further judicial review of the magistrate [judge's] decision.") (quotations omitted).

SO ORDERED.

/s/ *Sanket J. Bulsara*   2/8/2022
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York