UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
US ALLIANCE FEDERAL CREDIT UNION,

                              Plaintiff,                    **REPORT AND**
                                                           **RECOMMENDATION**
                                                           20-CV-1733-AMD-SJB

        - against -


M/V KAMARA FAMILY A/K/A SOULSTICE, her
engines, tackle, apparel, appurtenances,
etc., having Official No. 1248827 and Hull
Serial No. XAX40137E313, *in rem*, and
RUSLAN AGARUNOV, *in personam*,

                              Defendants.
---------------------------------------------------------x
**BULSARA, United States Magistrate Judge:**

        US Alliance Federal Credit Union ("US Alliance") filed this action seeking

foreclosure of the vessel M/V Kamara Family a/k/a Soulstice (the "Vessel"), alleging

that its owner, Ruslan Agarunov ("Agarunov" and collectively, "Defendants") defaulted

on the $350,000 loan used to purchase the Vessel.  US Alliance has now filed a third

motion for default judgment.  (Mot. for Default J. and Order of Sale dated Sept. 2, 2022

("Third Mot. for Default J."), Dkt. No. 39).  Defendants failed to appear or otherwise

defend the lawsuit, and US Alliance seeks authorization to sell the Vessel so it can

recover the remaining principal, attorney's fees and costs, and additional expenses.  The

Honorable Ann M. Donnelly referred the motion for default judgment to the

undersigned.  For the reasons stated below, the Court respectfully recommends the

motion be granted in part and denied in part.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Agarunov, in connection with the Purchase of the Vessel, executed a Loan and Security Agreement (the "Note") and a First Preferred Ships Mortgage (the "Mortgage") on October 13, 2015, in the principal amount of $350,000 with an interest rate of 7.740% per year. (Am. Compl. dated Mar. 30, 2022 ("Am. Compl."), Dkt. No. 30 ¶¶ 9, 10, 13; *see also* Loan and Security Agreement dated Oct. 13, 2015 (the "Note"), attached as Ex. C to Am. Compl., at 1; First Preferred Ships Mortgage dated Oct. 13, 2015 (the "Mortgage"), attached as Ex. D to Am. Compl., at 1). Agarunov made payments until January 2020. (Am. Compl. ¶¶ 14–15).

The Note provides that US Alliance may accelerate the remaining amounts due following default by the mortgagor. (Note at 2 ¶ 6). The Mortgage provides for the same. (Mortgage ¶ 22). Following Agarunov's default, US Alliance accelerated the remaining balance plus applicable interest and declared the entire sum under the Note due and payable. (Am. Compl. ¶ 23). Accordingly, on February 3, 2020, US Alliance sent a Right to Cure letter to Agarunov. (*Id.* ¶ 16; Notice of Right to Cure dated Feb. 3, 2020, attached as Ex. E to Am. Compl.). Following an Order of Judge Donnelly, on September 3, 2020, the Vessel was arrested by the U.S. Marshal. (Order of Issuance of Process of Maritime Attach. and Arrest dated Apr. 22, 2020, Dkt. No. 10; Notice of Action and Arrest of Vessel dated Sept. 10, 2020, Dkt. No. 13). On September 18, 2020, US Alliance published notice of the action and arrest in the newspaper, *Daily News*. (Aff. of Publication dated Sept. 18, 2020 ("Aff. of Publication"), attached as Ex. 12 to Third Mot. for Default J.).

The Court previously denied two motions for default judgment filed by US Alliance. *See US All. Fed. Credit Union v. M/V Kamara Fam.*, No. 20-CV-1733, 2021

WL 1795313, at *2 (E.D.N.Y. Apr. 16, 2021), *report and recommendation adopted*, 2021 WL 1784316, at *1 (May 5, 2021); *US All. Fed. Credit Union v. M/V Kamara Fam.*, No. 20-CV-1733, 2022 WL 607048, at *4 (E.D.N.Y. Feb. 8, 2022), *report and recommendation adopted*, 2022 WL 603933, at *1 (Mar. 1, 2022). The Court identified three deficiencies in the second motion: (1) a failure to attach the Note to the Complaint; (2) discrepancies between the dates of the Note; and (3) a failure to cite to authority to support the damages or other relief sought. *M/V Kamara Fam.*, 2022 WL 607048, at *2–*4.

On March 30, 2022, US Alliance filed an Amended Complaint. (Am. Compl.). Both Defendants were served with a summons and the Amended Complaint. (Summonses Returned Executed, Dkt. Nos. 35, 36). Neither appeared, both failed to answer, and, as a result, the Clerk of Court entered default against both on July 5, 2022. (Entry of Default, Dkt. No. 38).

On September 2, 2022, US Alliance filed a motion for default judgment against Defendants. (Third Mot. for Default J.). Pursuant to Local Civil Rule 55.2(c), US Alliance mailed the motion papers to the last known address of both Defendants. (Certificate of Service dated Sept. 2, 2022, attached as Ex. 17 to Third Mot. for Default J.).

As of August 31, 2022, the following sums were due and payable: (1) principal: $312,643.12; (2) accrued interest: $64,703.66; (3) late charges: $1,600; (4) U.S. Marshals' fees: $1,047.10; (5) filing fee: $400; (6) publication fee for Notice of Arrest:

$1,836.34; (7) legal fees: $26,642.20;[1] (7) abstract of title fee: $50; and (8) substitute custodian and storage fees: $54,806.10. (Aff. of Melissa Patzelt-Russo in Supp. of Mot. for Default J. dated Sept. 2, 2022 ("Russo Aff."), attached as Ex. 1 to Third Mot. for Default J., ¶ 38; Mem. in Supp. of Mot. for Default J. and Order of Sale dated Sept 2, 2022 ("Mem."), attached as Ex. 16 to Third Mot. for Default J., at 9–10).

The third motion cured all but one of the deficiencies. US Alliance attached the Note to the Amended Complaint, which was re-served on the Defendants. (Note; Summonses Returned Executed, Dkt. Nos. 35, 36). The Amended Complaint, the Mortgage, and the Note attached to the third motion for default judgment all now refer to the same date: October 13, 2015. (Am. Compl. ¶ 9; Mortgage at 1; Note at 1). But while US Alliance has now provided authority for the relief it seeks and calculated the daily amount in interest, it seeks attorney's fees for the work of present and prior counsel. Present counsel is entitled to fees; prior counsel, which was replaced, filed motions that were denied, and is not entitled to any recovery. Separately, US Alliance has failed to properly substantiate some of the costs it now seeks. As such, the Court recommends granting and denying the motion in part.

<u>DISCUSSION</u>

I.    <u>Entry of Default Judgment</u>

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-

---

[1] Elsewhere in its motion papers, Plaintiff requests legal fees of $26,640, (Aff. of Att'y Fees of Melissa Patzelt-Russo dated Sept. 2, 2022 ("Att'y Fees Aff."), attached as Ex. 13 to Third Mot. for Default J., ¶ 2), and $26,642.50. (Aff. of Crystal Garcia in Supp. of Mot. dated Sept. 1, 2022 ("Garcia Aff."), attached as Ex. 15 to Third Mot. for Default J., ¶ 12).

2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant.  *Id*. r. 55(b)(2).

Whether to enter a default judgment is committed to the discretion of the district court, within the limits articulated by the Second Circuit.  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) ("The circumscribed scope of the district court's discretion in the context of a default is a reflection of our oft-stated preference for resolving disputes on the merits.").  That is, the Second Circuit "ha[s] a strong preference for resolving disputes on the merits" and has cautioned that "a default judgment is the most severe sanction which the court may apply."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quotations omitted).

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor."  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B & M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016).  The Court must then determine "whether the unchallenged facts constitute a legitimate cause of action."  10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice*

*and Procedure* § 2688.1 (4th ed. 2022) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief.  Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."); *Labarbera v. ASTC Lab'ys Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation).

In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default.  *See Diakuhara*, 10 F.3d at 96.  "These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented."  *Id.*; *see also, e.g.*, *Brooklyn Navy Yard Dev. Corp. v. Harbor Diesel Fuel Servs., Inc.*, No. 10-CV-5715, 2014 WL 4364628, at *2–*3 (E.D.N.Y. Aug. 1, 2014), *report and recommendation adopted*, 2014 WL 4385413, at *1 (Sept. 3, 2014).

First, Agarunov and the Vessel's failure to respond to the Amended Complaint demonstrates their default was willful.  *See, e.g.*, *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding defendants' non-appearance and failure to respond "indicate[d] willful conduct" and granting plaintiff's default judgment against them).

They had sufficient notice of the present litigation.  Agarunov was served by delivery of a copy of the Amended Complaint and summons to a person of suitable age and discretion at his actual place of business, dwelling house, or usual place of abode and by mailing the Amended Complaint and summons via first-class mail to the same address.  (Summons Returned Executed dated May 6, 2022, Dkt. No. 35).  The Vessel

6

was served by the delivery and affixing of the summons and Amended Complaint to it. (Summons Returned Executed dated June 3, 2022, Dkt. No. 36).

US Alliance also provided the notice required by Local Admiralty Rule C.3 and Supplemental Rule C(4). *See JP Morgan Chase Bank, N.A. v. M/Y FORTUNA*, No. 11-CV-2514, 2013 WL 1148920, at *5 (E.D.N.Y. Feb. 12, 2013) ("Plaintiff is required to comply with procedural safeguards that ensure notice of the sale to anyone who may have an interest [in] the vessel."), *report and recommendation adopted*, 2013 WL 1195420, at *1–*2 (Mar. 20, 2013). Supplemental Rule C(4) requires a plaintiff to "promptly . . . give public notice of the action and arrest in a newspaper designated by court order and having general circulation in the district." Fed. R. Civ. P. Supp. Rs. for Admiralty or Mar. Claims & Asset Forfeiture Actions C(4).

On September 18, 2020, US Alliance filed a notice of this action and the arrest of the Vessel in *Daily News*. (Aff. of Publication). The notice stated that any interested parties must file their claims within fourteen days of September 3, 2020, and their answer to the complaint within twenty-one days, (*id.*), and it included

> (1) the fact and date of the arrest, (2) the caption of the case, (3) the nature of the action, (4) the amount demanded, (5) the name of the marshal, (6) the name, address, and telephone number of the attorney for the plaintiff, and (7) a statement that claimants must file their claims with the clerk of this court within fourteen (14) days after notice or first publication (whichever is earlier) or within such additional time as may be allowed by the court and must serve their answers within twenty one (21) days after the filing of their claims. The notice shall also state that all interested persons should file claims and answers within the times so fixed otherwise default will be noted and condemnation ordered.

Loc. Admiralty & Mar. R. C.2(a); *id*. r. C.3(a)(1) (mandating notice by publication in accordance with Local Admiralty Rule C.2 as a prerequisite for any motion for default judgment in *in rem* actions).

US Alliance identified Agarunov as the sole owner of the Vessel, (Am. Compl. ¶¶ 5, 17), and it has provided notice of the action and arrest of the ship to him in accordance with Local Admiralty Rule C.3(a)(3), that is, by mail to his last known address.  (Certificate of Service dated Sept. 2, 2022, attached as Ex. 17 to Third Mot. for Default J.); *see* Loc. Admiralty & Mar. R. C.3(a)(3) (mandating notice pursuant to Federal Rule of Civil Procedure 5(b) "upon every other person who has not appeared in the action and is known to have an interest in the property"); Fed. R. Civ. P. 5(b)(2)(C) (authorizing service by mail to a person's last known address).[2]

Notwithstanding this notice and service, Agarunov and the Vessel did not respond to the Amended Complaint and have not in any way attempted to defend this action.

As to the second factor, US Alliance would be prejudiced if the motion for default judgment were denied because "[w]ithout the entry of a default judgment, [it] would be unable to recover for the claims adequately set forth in the Complaint."  *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation); *e.g.*, *Garpo Marine Servs. Inc.*

---

[2] Local Admiralty Rule C.3 also requires notice be provided to (1) the custodian of the Vessel; (2) "every other person who has not appeared in the action and is known to have an interest in the property"; (3) for vessels documented under U.S. law, all other persons identified by the U.S. Coast Guard "as holding an ownership interest in or as holding a lien in or as having filed a notice of claim of lien with respect to the vessel"; (4) for numbered vessels, all "persons named in the records of the issuing authority"; and (5) if there exists a government registry of recorded interests in the vessel, to all other persons with recorded interests named in such registries.  Loc. Admiralty & Mar. R. C.3(a)(3), (b)(1), (3).  Here, US Alliance provided notice to the Substitute Custodian on September 16, 2020.  (Proof of Service dated Aug. 2, 2023, Dkt. No. 43 ¶ 1).  The Court is also satisfied, upon review of the abstract procured from the U.S. Coast Guard, (Abstract of Title dated Nov. 7, 2019, attached as Ex. F to Am. Compl., at 3), that US Alliance has provided notice to the only persons with ownership or other interests in the Vessel.

v. *Island Romance*, No. 19-CV-6875, 2021 WL 6805890, at *8 (E.D.N.Y. Sept. 30, 2021), *report and recommendation adopted*, 2022 WL 341194, at *1 (Feb. 4, 2022).

Third, the Court cannot conclude there is any meritorious defense to US Alliance's allegations because no party has appeared to present a defense to the Amended Complaint and no party has appeared to assert a claim to the Vessel. *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1; *PMJ Cap. Corp. v. Bauco*, No. 16-CV-624, 2018 WL 4759741, at *2 & n.2 (S.D.N.Y. Sept. 29, 2018).

All three factors weigh in favor of the entry of default judgment. The Court now turns to the liability imposed, damages, and other relief to be awarded.

II.   <u>Liability</u>

"The determination of a deficiency judgment and judicial sale procedures in a maritime lien case are governed by federal law." *M/Y FORTUNA*, 2013 WL 1148920, at *5. "The Ship Mortgage Act, when read together with the statutes delineating the judicial sale procedure in the federal courts forms a comprehensive procedure for the foreclosure of a preferred ship's mortgage, the sale of the vessel and any resulting deficiency adjudged against the debtor *In personam.*" *Id.* (quoting *Walter E. Heller & Co. v. O/S Sonny V*, 595 F.2d 968, 971 (5th Cir. 1979)).[3]

US Alliance asserts two claims under the Commercial Instruments and Maritimes Liens Act ("CIMLA"): (i) an *in rem* claim against the Vessel; and (ii) an *in personam* claim against Agarunov. The Court finds that the allegations in the Amended Complaint establish the Defendants' liability for both claims.

---

[3] The CIMLA replaced the Ship Mortgage Act in 1989. 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 9:5 (6th ed. 2021).

Under the CIMLA, a "preferred mortgage" creates a maritime lien against a mortgaged vessel. 46 U.S.C. § 31325(a). "A maritime lien is a special property right in the vessel, arising in favor of the creditor by operation of law as security for a debt or claim, which arises when the debt arises." *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018) (quotations and alteration omitted).

"A preferred mortgage is one that has been filed 'in substantial compliance with section 31321'" of the CIMLA, *Maryland Nat'l Bank v. Yacht Escape II*, 817 F. Supp. 1, 1 (E.D.N.Y. 1993) (quoting 46 U.S.C. § 31322(a)(1)(B)), a provision that contains a number of recording and filing requirements. *See generally Midlantic Nat'l Bank v. Sheldon*, 751 F. Supp. 26, 28–29 (E.D.N.Y. 1990); *Bank of the W. v. Sailing Yacht Serendipity*, 101 F. Supp. 3d 238, 248 (E.D.N.Y. 2015).

Section 31321 provides that a mortgage must be filed with the U.S. Coast Guard at the vessel's home port in order to be valid. 46 U.S.C. § 31321(a)(1). In addition, in order to be validly recorded, the mortgage must:

(1) identify the vessel;
(2) state the name and address of each party to the instrument;
(3) state . . . the amount of the direct or contingent obligations . . . that is or may become secured by the mortgage, excluding interest, expenses, and fees;
(4) state the interest of the grantor, mortgagor, or assignor in the vessel;
(5) state the interest sold, conveyed, mortgaged, or assigned; and
(6) be signed and acknowledged.

46 U.S.C. § 31321(b).

The Mortgage is a "preferred mortgage" subject to the CIMLA because it: (1) identifies the "mortgaged vessel" as "Kamara Family" and includes its hull number and port of documentation; (2) identifies Agarunov as the mortgagor and US Alliance as the mortgagee, and it lists their addresses; (3) identifies the total amount of the mortgage as $350,000; (4) identifies Agarunov as the owner of the Vessel; (5) grants US Alliance a

mortgage covering "the whole of the boat named above"; and (6) is signed by Agarunov and properly acknowledged by a notary public. (Mortgage). US Alliance properly filed the Mortgage with the U.S. Coast Guard National Vessel Documentation Center. (Am. Compl. ¶ 10; Abstract of Title dated Nov. 7, 2019, attached as Ex. F to Am. Compl., at 3).

Upon default on a preferred mortgage, a mortgagee, like US Alliance, may enforce the claim against the secured vessel. 46 U.S.C. § 31325(b)(1); *Sheldon*, 751 F. Supp. at 28. Such an action is filed *in rem* against the vessel, and recovery is limited to the value of the vessel. *Bay Casino, LLC. v. M/V Royal Empress*, 20 F. Supp. 2d 440, 447–48 (E.D.N.Y. 1998).

The second method of enforcing a preferred mortgage under the CIMLA is by commencing "a civil action in personam in admiralty against the mortgagor . . . for the amount of the outstanding indebtedness." 46 U.S.C. § 31325(b)(2)(A); *see also Sheldon*, 751 F. Supp. at 28.

US Alliance has established that it is the owner and holder of both the Mortgage and Note. (Am. Compl. ¶ 12). The Note requires Agarunov to pay US Alliance $350,000, the principal amount of the loan, plus an annual interest rate of 7.74%. (Note at 1). The term of the loan is 240 months, and Agarunov was required to make monthly payments of $2,871.93 beginning on November 13, 2015. (*Id.*). Agarunov stopped making payments in January 2020. (Am. Compl. ¶ 15). At that point, Agarunov had not paid $313,735.22 of the principal amount due under the loan. (*Id.* ¶ 19).

That breach constituted a default under the Note, (Note at 2 ¶ 5 ("[Agarunov] will be in default under this Agreement if [he] do[es] not make a payment of the amount required on or before the date it is due.")), and Mortgage, (Mortgage ¶ 22 ("[Agarunov]

will be in default if . . . [he] do[es] not make any payment when due[.]")), and permitted acceleration of the obligation.

By virtue of Agarunov's default on the Note and Mortgage, US Alliance has established that it may enforce the Mortgage *in rem* against the Vessel.  46 U.S.C. § 31325(b) ("On default of any term of the preferred mortgage, the mortgagee may . . . enforce the preferred mortgage lien in a civil action in rem[.]"); *M/Y FORTUNA*, 2013 WL 1148920, at \*6 ("[The mortgagor] defaulted under the terms of the Mortgage by, among other things, failing to make monthly installment payments when due.  These allegations are uncontested, and establish liability on the Mortgage *in rem* as a matter of law." (citation omitted)).

And when Agarunov failed to make any payment, US Alliance was entitled to judgment against him personally.  *See, e.g.*, *Coventry Credit Union v. Mailman's Saving Grace*, No. 17-CV-1149, 2019 WL 13274547, at \*4 (E.D.N.Y. Jan. 18, 2019) ("Coventry lent money to Mr. Mailman for the purchase of the Vessel, and Mailman has failed to make payments on the loan and later failed to cure his default.  This is a classic breach of a contract." (citing Restatement (Second) of Contracts § 1 (1981))); *Sailing Yacht Serendipity*, 101 F. Supp. 3d at 250; *Millennial Cap. Mgmt., LLC v. M/Y Cloud Ten*, No. 3:16-CV-693, 2016 WL 11468572, at \*3 (M.D. Fla. Sept. 29, 2016) ("[T]he well-pleaded allegations of the Complaint, which are deemed admitted, identify in sufficient detail the Promissory Note in both its original and amended versions, Defendants' default of the same, Plaintiff's security interest in the Vessel pursuant to the First Preferred Ship Mortgage (also in original and amended form), Defendants' breach of their obligations thereunder, and Plaintiff's right to recover against Defendants pursuant to the terms of

the Note and the Mortgage[.]"), *report and recommendation adopted*, 2016 WL 6123368, at *1 (Oct. 20, 2016).

III.   Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-301, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages, even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases). Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount of damages "as long as it ensured that there was a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Gilbert*, No. 20-CV-1441, 2022 WL 344270, at *3 (N.D.N.Y. Feb. 4, 2022) ("A hearing is not necessary where the record contains detailed affidavits and documentary evidence that enables the court to evaluate

13

the proposed sum and determine an award of damages." (citing *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993))).

US Alliance has submitted the requisite documentation to provide a basis for damages, including the affidavit of Crystal Garcia, Collateral and Risk Manager for US Alliance. (Garcia Aff. at 2). US Alliance seeks a judgment and order of sale with the proceeds applied to a total amount owed of $463,728.32 as of August 31, 2022. (*See id.* ¶¶ 11–13). This total includes US Alliance's request for reimbursement of attorney's fees and various costs that total $84,782.04. (*Id.* ¶ 12).

A.    <u>Principal, Interest, and Late Charges</u>

As of August 31, 2022, the remaining principal of the Mortgage and Note was $312,643.12. (*Id.* ¶ 11; Transaction History dated Aug. 30, 2022 ("Transaction History"), attached as Ex. 10 to Third Mot. for Default J., at 10).

US Alliance alleges that the total accrued interest as of August 31, 2022 was $64,703.66. (Garcia Aff. ¶ 11). According to the terms of the Loan, the interest rate at the time of default was 7.74%. (Note at 1; Garcia Aff. ¶ 8). The interest for this account is calculated by taking the principal balance (*i.e.*, $312,643.12) and multiplying it by 7.74% and then dividing that number by 365 days to obtain the *per diem* interest which, in this case, equals $66.30. (*See* Garcia Aff. ¶ 8). Since there are 960 days between January 14, 2020—the date of default—and August 31, 2022, the Court calculates the total interest as $63,648.

Additionally, US Alliance seeks "an award of prejudgment interest, from the date of the filing of the Complaint to present, at a rate of nine percent per annum." (Mem. at 9). "In admiralty cases prejudgment interest 'should be granted in the absence of exceptional circumstances.'" *Am. Oil Trading, Inc. v. M/V Sava*, 47 F. Supp. 2d 348,

14

353 (E.D.N.Y. 1999) (quoting *Magee v. U.S. Lines, Inc.*, 976, F.2d 821, 822 (2d Cir. 1992)).  Finding no exceptional circumstances, the Court recommends awarding US Alliance *per diem* prejudgment interest.  US Alliance requests that prejudgment interest be awarded at the state statutory rate for breach of contract cases of 9% *per annum* "consistent with N.Y. C.P.L.R. § 5004." (Mem. at 9).  However, the Note already provides for an interest rate of 7.74%, and the Note provides that if US Alliance sought immediate payment of the unpaid balance after default, Agarunov "will continue to pay interest at the rate provided for in [the Note], until what [Agarunov] owe[s] has been repaid." (Note at 2 ¶ 6).  US Alliance has provided no reason why the Court should grant prejudgment interest at a rate higher than what the parties contracted, or why the statutory rate trumps the contract rate.  The Court, therefore, recommends awarding US Alliance prejudgment interest at the existing *per diem* rate of $66.30 from September 1, 2022 until the date on which judgment is entered.  *See, e.g.*, *Sailing Yacht Serendipity*, 101 F. Supp. 3d at 251 (awarding plaintiff prejudgment interest at the rate provided for in the sales contract and security agreement).

US Alliance also seeks late fees of $1,600.  (Garcia Aff. ¶ 11).  US Alliance fails to make clear how it arrived at this total in its motion papers.  However, the Note states: "If you are 7 or more days late in making your payments, a late charge of 20% of the finance charges then due, but not less than $25.00, will be deducted from your payment.  The maximum late charge is $50.00 per occurrence." (Note at 1).  Agarunov was in default starting in January 2020 for an amount that exceeded $250—20% of which triggers the maximum, and he owed thirty-two months of maximum late charges by August 31, 2022. (*See* Transaction History at 10).  The Court confirmed the total late charges owed of $1,600 as of August 31, 2022.

The sum of these three individual components as of August 31, 2022—principal, accrued interest, and late charges—is $377,891.12.

B.    Attorney's Fees

US Alliance also seeks an award of $26,642.50 in attorney's fees to be paid out of the proceeds of the judicial sale.  (Garcia Aff. ¶ 12);[4] *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365, 2013 WL 2444151, at *4 (E.D.N.Y. June 5, 2013) ("Courts may also award fees pursuant to an applicable statute or contract between the parties.").  "In New York, a party is entitled to recover attorneys' fees if such recovery is 'authorized by agreement between the parties.'"  *Billybey Marina Servs., LLC v. Affs. Afloat, Inc.*, No. 14-CV-6722, 2016 WL 1266608, at *4 (E.D.N.Y. Mar. 11, 2016) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003)), *report and recommendation adopted*, 2016 WL 1271479, at *1 (Mar. 30, 2016).  Here, both the Note and Mortgage allow for the collection of attorney's fees and court costs by US Alliance.  (Note at 3 ¶ 9 ("Those costs may include . . . attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code."); Mortgage ¶ 33 ("Mortgagee shall be entitled to its reasonable attorney's fees and court costs[.]")).

The starting point for determining the amount of attorney's fees to be paid by Defendants is calculation of the "lodestar," which is "calculated as the product of the reasonable number of hours worked and a reasonable hourly rate."  *Agudath Isr. of Am. v. Hochul*, No. 22-38, 2023 WL 2637344, at *1 (2d Cir. Mar. 27, 2023).  When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by examining what reasonable clients would be willing to

---

[4] As noted above, *supra* n.1, US Alliance provides three different totals for the amount it seeks in attorney's fees.

pay.  *See id.* (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008)).  To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed.  *Id.*  The next step is to determine the reasonableness of the hours expended by counsel.  *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 U.S. Dist. LEXIS 125161, at *9 (E.D.N.Y. Feb. 26, 2008), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 21770, at *3 (Mar. 17, 2008).  The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary.  *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022); *see, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)) (adopting report and recommendation).  "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award."  *Finkel v. Captre Elec. Supply Co.*, No. 14-CV-3584, 2015 WL 5316257, at *5 (E.D.N.Y. July 31, 2015) (quotations omitted), *report and recommendation adopted*, 2015 WL 5330388, at *1 (Sept. 11, 2015).

US Alliance is on its third law firm in this litigation.  Taroff & Taitz, LLP ("Taitz"), the first firm, was replaced by Chalos & Co., P.C. ("Chalos"), on March 1, 2022.  (Order dated Mar. 1, 2022).  Chalos filed the currently pending third motion for default judgment.  Chalos itself was substituted by Akerman LLP on March 20, 2023.  (Order dated Mar. 20, 2023).  Attorneys at Akerman LLP have taken no action on the public docket except for filing notices of appearance and responding to recent court orders.  (Mot. to Substitute Att'y dated Mar. 17, 2023, Dkt. No. 40; Notice of Appearance dated

Apr. 20, 2023, Dkt. No. 42; Proof of Service dated Aug. 2, 2023, Dkt. No. 43; Letter dated Aug. 4, 2023, Dkt. No. 44).

US Alliance seeks attorney's fees for a total of $26,642.50—$16,852.50 for work by Taitz and $9,790 for work by Chalos. (Garcia Aff. ¶ 12). US Alliance only attached an attorney's fees affidavit and time records from Chalos to the third motion for default judgment.

The Court declines to award attorney's fees for work completed by Taitz. *First*, the failure to include an affidavit and time records to substantiate Taitz's application is reason alone for denial. The Second Circuit requires that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . document the application with contemporaneous time records." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Those records "should specify, for each attorney, the date, the hours expended, and the nature of the work done." *Id.* To be contemporaneous, the time records "must be made . . . while the work is being done or . . . immediately thereafter." *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 249 (S.D.N.Y. 2010). "Descriptions of work recollected in tranquility days or weeks later will not do." *Id.* While there were papers submitted by Taitz in connection with prior motions for default judgment, those motions were denied, and those papers are no longer operative. And Chalos does not incorporate the records of Taitz in connection with the present motion. The Court lacks evidence of Taitz's work in the case—this alone is a basis for denial. *See, e.g.*, *United States v. Carroll*, No. 19-CV-1709, 2023 WL 3260128, at *9 (W.D.N.Y. Mar. 29, 2023) (denying request for attorney fees associated with foreclosure action because plaintiff's "request for attorney's fees remains insufficiently supported for want of contemporaneous time records or supporting

18

documentation" (quotations omitted)), *report and recommendation adopted*, 2023 WL 3254937, at *1 (May 3, 2023); *Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-CV-3027, 2015 WL 1529772, at *3 (E.D.N.Y. Apr. 2, 2015) ("When an attorney fails to keep contemporaneous records, a motion for fees must ordinarily be denied in its entirety.").

*Second*, Taitz's work was in connection with unsuccessful motions. "[A] district court properly excludes documented hours that are excessive, redundant, or otherwise unnecessary." *Oriska Corp. v. Garden Care Ctr., Inc.*, No. 21-CV-2010, 2022 WL 2834940, at *2 (E.D.N.Y. July 20, 2022) (adopting report and recommendation); *see Raja*, 43 F.4th at 87 (quotations omitted). As such, "fees should not be awarded for time expended on an unsuccessful motion." *DeMarco v. Ben Krupinski Gen. Contractor, Inc.*, No. 12-CV-573, 2014 WL 3696020, at *9 (E.D.N.Y. July 22, 2014) (collecting cases). "When reviewing a fee application, a district court should 'examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case,' and if it 'concludes that any expenditure of time was unreasonable, it should exclude these hours' from the fee calculation." *Agudath Isr. of Am.*, 2023 WL 2637344, at *2 (alteration omitted) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997)). Courts reduce attorney's fees for "work done on motions that were never filed, on claims that were abandoned, on motions that were unreasonable or had little chance of success, and on submissions that failed to comply with court orders." *Murray v. Marshall*, No. 15-CV-599, 2020 WL 5899851, at *6 (E.D.N.Y. Mar. 16, 2020) (quotations omitted), *report and recommendation adopted as modified*, 2020 WL 3819075, at *2 (July 8, 2020). "[T]he critical factor in determining whether to reduce counsel's hours because of unsuccessful claims is the degree to which counsel achieved success in the lawsuit as a whole." *Restivo v. Nassau*

*County*, No. 06-CV-6720, 2015 WL 7734100, at *3 (E.D.N.Y. Nov. 30, 2015), *aff'd sub nom. Restivo v. Hessemann*, 846 F.3d 547, 592 (2d Cir. 2017).

Taitz filed two motions for default judgment that were each denied for a number of reasons, which were detailed earlier. *See supra* at 2–3; *M/V Kamara Fam.*, 2021 WL 1784316, at *1 (adopting report and recommendation and denying motion for default judgment); *M/V Kamara Fam.*, 2022 WL 603933, at *1 (same). Taitz should not be awarded—and Defendants should not be liable—for time spent on failed motion practice. *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 427 (2d Cir. 1999) ("[F]ees should not be awarded for time spent on [the] unsuccessful motion[.]"); *e.g.*, *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 13 (S.D.N.Y. 2015) (reducing attorney fee award for time spent attributable to the unsuccessful motion); *DeMarco*, 2014 WL 3696020, at *10 (same).

*Third*, to award fees to multiple firms for a single default would be a double penalty imposed upon Defendants, since the Chalos firm had to file a new motion for default judgment. To the extent that the work of a prior firm (Taitz) was relied upon by the new firm, Chalos, that work is not identified by Chalos in papers filed with the present motion. And relatedly, Chalos does not explain why the Court may award it fees incurred by another firm, which has been removed from the case. To the extent that Taitz was interested in asserting a lien on the proceeds, having been removed from the case, it may have been required to file a motion to intervene or similar relief.[5] *See*

---

[5] "[A]n attorney's charging lien is not the only potential source of remuneration for terminated counsel. Under New York law, the attorney still has an avenue to recover legal fees owed via a plenary action in *quantum meruit* for the reasonable value of services rendered. This remedy, pursued by Butler in state court, is distinct from the charging lien remedy and the law firm's suit to fix the charging lien does not preclude a

generally *Peterson v. Islamic Republic of Iran*, 690 F. App'x 744, 744–46 (2d Cir. 2017) ("Cook seeks intervention to protect his asserted contractual interest and statutory charging lien on the proceeds from a judgment in favor of certain plaintiffs he used to represent[.]").  And even if that was not required, if Taitz was discharged for cause— though US Alliance has provided no explanation for why it was substituted out—it has no right to any lien.  *Wisehart v. Healy-Murray*, 57 F. App'x 25, 26 (2d Cir. 2003).  In sum, the complications and barriers to awarding fees to Taitz are many, none are addressed in the papers, and as such Chalos's request for Taitz's fees is denied.

The Court, therefore, only evaluates the request for attorney's fees submitted by Chalos.

Turning first to the reasonable hourly rate, the Court first examines the experience and qualifications of counsel seeking the fee award.  "The burden is on the party moving for attorney's fees to justify the hourly rates sought."  *Brown v. Green 317 Madison, LLC*, No. 11-CV-4466, 2014 WL 1237448, at *5 (E.D.N.Y. Feb. 4, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)), *report and recommendation adopted*, 2014 WL 1237127, at *1 (Mar. 25, 2014).  That is, "the fee applicant [has the burden] to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see also Farbotko v. Clinton County*, 433 F.3d 204, 208 (2d Cir. 2005) ("The relevant community . . . is the district in which the court sits.").

_____

suit in *quantum meruit*."  *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001).

Chalos seeks attorney's fees for the work conducted by two attorneys. Michael Chalos requests an hourly rate of $450. (Att'y Fees Aff. ¶ 3). He has been practicing law for more than 40 years and is admitted to practice in several districts and Courts of Appeals. (*Id.* ¶ 5). "He has extensive experience handling maritime matters and vessel arrest." (*Id.*). Melissa Patzelt-Russo requests an hourly rate of $300. (*Id.* ¶ 3). She has been practicing law for over 10 years and is likewise admitted to practice in several districts and Courts of Appeals. (*Id.* ¶ 6). She also has "extensive experience" handling maritime arrest and attachments. (*Id.*).

The Court finds the hourly rates charged—ranging from $300 to $450—to be commensurate with fees charged by attorneys in this circuit for comparable work. "In this district, approved hourly rates for attorneys normally range from $200 to $450 for partners in law firms, $200 to $325 for senior associates, [and] $100 to $200 for junior associates[.]" *Liu v. Little Saigon Cuisine Inc.*, No. 18-CV-2181, 2023 WL 1785544, at *2 (E.D.N.Y. Feb. 6, 2023) (quotations omitted); *see, e.g.*, *Billybey Marina Servs.*, 2016 WL 1266608, at *5 (awarding up to $450 hourly rate for attorney's fees in maritime default judgment action). Because both attorneys have over a decade of legal experience, the Court finds that it is appropriate to award them an hourly rate within the range of that awarded in other similar actions.

After determining the reasonableness of the hourly rate, "[a] court determines whether the hours claimed by the prevailing side were 'reasonably expended,' and adjusts the award accordingly. District courts are then charged with factoring in 'other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained.'" *Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 106 (2d Cir. 2022) (quoting *Hensley*, 461 U.S. at 433–34).

Chalos submitted contemporaneous billing records with the third default judgment motion showing the legal services rendered, including the dates that the services were provided, the amount of time during which services were provided, and a brief description of each service.  (Att'y Fees Invoices, attached as Ex. A to Att'y Fees Aff.).  According to the billing records submitted, Chalos attorneys spent a total of 26.8 hours on this matter, incurring $9,330 in legal fees before costs for "[t]elephone, photocopy, telefax, postage."  (*Id.*).  Having reviewed the hours and time records submitted, the Court finds the hours expended by Chalos to be reasonable.  *See, e.g., Billybey Marina Servs.*, 2016 WL 1266608, at *5 (finding a total of 36.1 hours spent by counsel on maritime default judgment case to be reasonable); *Coventry Credit Union*, 2019 WL 13274547, at *8 (finding total of 17.5 hours spent on maritime default judgment action to be reasonable).

In sum, the Court awards $9,330 in attorney's fees to Chalos & Co., P.C.

C.    Costs

US Alliance seeks reimbursement for costs consisting of $400 in court filing fees and $430 in legal costs identified in the Chalos time records.  (Russo Aff. ¶ 38; Att'y Fees Aff. ¶ 2; Att'y Fees Invoices).  Ordinarily, plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying."  *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008).  Only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable. *Moon v. Gab Kwon*, No. 99-CV-11810, 2002 WL 31512816, at *8 (S.D.N.Y. 2002) (quoting *Kuzma v. IRS*, 821 F.2d 930, 933–34 (2d Cir. 1987)).

Filing fees are recoverable without supporting documentation if verified by the docket.  *E.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at

23

*2 (E.D.N.Y. Mar. 7, 2013) (adopting report and recommendation in part); *Philpot v. Music Times LLC*, No. 16-CV-1277, 2017 WL 9538900, at *11 (S.D.N.Y. Mar. 29, 2017) (stating that the filing fee is "a fact of which the Court can take judicial notice"), *report and recommendation adopted*, 2017 WL 1906902, at *2 (May 9, 2017).  The docket indicates the $400 filing fee was paid.  Therefore, although US Alliance did not submit a receipt, the requested amount of $400 for the filing fee is awarded.

The Court also awards the reported costs for "[t]elephone, photocopy, telefax, postage" for a total of $360.  (Att'y Fees Invoices).  *See, e.g.*, *Billybey Marina Servs.*, 2016 WL 1266608, at *5 (recommending an award of $730.16 in costs, including the filing fees); *Coventry Credit Union*, 2019 WL 13274547, at *8 (awarding $627.90 in default judgment litigation costs); *M/Y FORTUNA*, 2013 WL 1148920, at *9 (granting award for disbursements totaling $1,014.81).  However, it declines to award the unsubstantiated charge of $100 for "Undisputed Legal—Invoice 6954536."  (Att'y Fees Invoices at 4).  *Chen v. Shanghai Café Deluxe, Inc.*, No. 16-CV-4790, 2023 WL 2401376, at *17 (S.D.N.Y. Mar. 8, 2023) ("Plaintiff has not provided any documentation to substantiate these costs.  Plaintiff is thus not entitled to an award for any of these unsubstantiated costs.") (collecting cases); *M/Y FORTUNA*, 2013 WL 1148920, at *9 (denying request for "skip trace" fee as "inadequately documented").

As for other costs, US Alliance seeks to recover $1,047.10 in Marshals' fees, $1,836.34 for publishing the Notice of Arrest, $50 in abstract of title fees, and $54,806.10 in substitute custodian and storage fees through August 2022.  (Russo Aff. ¶ 38; Garcia Aff. ¶ 12).  However, despite the Court's admonition in the previous Report and Recommendation, US Alliance still "provides no case authority or argument regarding the recovery of [these] costs."  *M/V Kamara Fam.*, 2022 WL 607048, at *3

("The Note may provide for such recovery, (*see* Note ¶ 9), but that is insufficient for the Court to impose judgment.  Some legal analysis is required; none is provided.").[6] Therefore, US Alliance's request for these costs is denied.

## IV.   Judgment of Foreclosure and Judicial Sale

US Alliance seeks to sell the Vessel via judicial sale.  (Third Mot. for Default J. at 1; Russo Aff. ¶ 37; Proposed Default J., attached as Ex. 18 to Third Mot for Default J.). The CIMLA provides for such a remedy.  46 U.S.C. § 31326(a) ("[A] vessel [may be] sold by order of a district court in a civil action in rem brought to enforce a preferred mortgage lien or a maritime lien[.]"); *e.g.*, *Garpo Marine Servs.*, 2021 WL 6805890, at *8; *Sailing Yacht Serendipity*, 101 F. Supp. 3d at 254–55.  And the Mortgage also includes a pledge of the Vessel as security for the loan and authorizes the sale of the Vessel in the event of the mortgagor's default.  (Mortgage ¶¶ 7, 24).

"A judicial sale will extinguish the *in rem* liability of the [vessel]."  *Garpo Marine Servs.*, 2021 WL 6805890, at *8; *Sailing Yacht Serendipity*, 101 F. Supp.3d at 254–55. US Alliance also requests that any deficiency be satisfied by a judgment *in personam* against Agarunov.[7]  US Alliance requests, in the alternative, should there be any excess

---

[6] The Court separately notes that here the substantial custodian and storage fees were incurred due to the failed default judgment motion practice.  Had basic errors in the motions not been made, the foreclosure and sale could have been consummated earlier, and obviated the need for these extra fees.  To the extent that US Alliance believes it is entitled to storage fees notwithstanding its counsel's errors, it should have provided legal authority to that effect.  Having been directed to do so, and failed to heed the Court's admonition, its recovery is disabled.

[7] By letter dated August 4, 2023, counsel for US Alliance indicated it is seeking a judgment *in personam* against Agarunov, should the sale of the Vessel not satisfy the outstanding obligations under the Note and Mortgage.  (Letter dated Aug. 4, 2023, Dkt. No. 44 at 1).

proceeds from the sale beyond the liability imposed, "any surplus monies to be deposited with the registry of the Court." (Russo Aff. ¶ 37).

For the reasons above, the Court recommends the request for the Vessel to be sold at judicial auction be granted, and the proceeds be used in full to satisfy the amounts determined by this Report and Recommendation, with a judgment *in personam* entered against Agarunov, to the extent that the sale does not cover all liabilities, and any surplus from the sale be deposited with the Clerk of Court.

CONCLUSION

For the reasons described above, the Court respectfully recommends that US Alliance's motion for default judgment be granted and that:

1.      Judgment be entered against the M/V Kamara a/k/a Soulstice *in rem* in the amount of $377,891.12 and that the United States Marshal be directed to sell the Vessel in accordance with the Supplemental and Local Admiralty Rules;

2.      From the proceeds of the sale,

a.      US Alliance be awarded the total sum of $377,891.12, plus *per diem* prejudgment interest at the rate of $66.30 *per diem*, beginning from September 1, 2022 until the date on which judgment is entered;

b.      Attorney's fees of $9,330 and costs in the amount of $760 be awarded to Chalos & Co., P.C.;

c.      Any excess amounts not covering the preceding obligations be deposited with the Clerk of Court.

3.  Judgment be entered against Agarunov *in personam*, only to the extent the proceeds of the sale do not satisfy the monetary amounts owed above.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

US Alliance is directed to serve a copy of this Report and Recommendation on all Defendants and file proof of such service on the record.

SO ORDERED.

*/s/ Sanket J. Bulsara*  August 16, 2023
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York